# Edison Electric Illuminating Company, Appellant, *v.* Tamaqua Light, Heat & Power Company.

*Equity—Equity practice—Evidence—Findings of fact—Electric light companies.*

On a bill in equity by one electric light company against another electric light company, to restrain the erection of poles and the stringing of wires on the same side of a street already occupied by the poles and wires of the plaintiff, a finding by the court below based upon sufficient evidence, that the wires of the defendant were sufficiently distant from the wires of the plaintiff and were sufficiently secured, so as not to endanger the public, or interfere with the plaintiff, will be sustained by the appellate court in the absence of manifest error.

Argued Feb. 19, 1907. Appeal, No. 380, Jan. T., 1907, by plaintiff, from decree of C. P. Schuylkill Co., Sept. T., 1905, No. 2, dismissing bill in equity in case of the Edison Electric Illuminating Company of Tamaqua v. The Tamaqua Light, Heat & Power Company. Before MITCHELL, C. J., FELL, BROWN, POTTER and STEWART, JJ. Affirmed.

Bill in equity for an injunction. · Before BECHTEL, P. J.

The opinion of the Supreme Court states the case.

*Error assigned* among others was decree dismissing the bill.

*Cyrus G. Derr*, with him *F. P. Krebs, R. H. Koch* and *F. G. Farquhar*, for appellants, cited : Edison Electric Light & Power Co. v. Merchants & Manufacturers Electric Light, Heat & Power Co., 200 Pa. 209.

*A. W. Schalck*, with him *J. O. Ulrich*, for appellees, cited : Scranton Electric Light, etc., Co. v. Scranton Illuminating,

etc., Co., 3 Pa. C. C. Rep. 628; Cent. Penna. Tel. & Supply Co. v. Wilkes-Barre, etc., Ry. Co., 11 Pa. C. C. Rep. 417; Schuylkill Traction Co. v. Shenandoah Borough, 9 Pa. Dist. Rep. 77.

. Opinion by Mr. Justice Stewart, May 20, 1907:

This is a controversy between two rival electric light companies. The Tamaqua Light, Heat & Power Company, here the appellee, in constructing its overhead line occupied in many places with its poles and wires the same side of the street which was then, and had been for many years previous, occupied by the Edison Illuminating Company of Tamaqua with its poles and wires. The latter company filed its bill alleging that the effect of the occupancy by the former in the manner undertaken and proposed, would render access to plaintiff's wires dangerous, and be a source of danger to the public as well. The bill prayed for an injunction to restrain the defendant company from erecting its poles and stringing its wires on the same side of the street where poles and wires were maintained by the plaintiff company, or in any way interfering with the latter's poles, wires, right of way, franchise or property. The answer denied any interference, or that the construction of defendant's line in the way proposed would make access to plaintiff's wires dangerous, or increase the danger in any way. A preliminary injunction was granted as prayed for, which upon final hearing was dissolved. The bill was filed before defendant's line was fully constructed. During the course of the construction much of the work was temporary and provisional in its character. In view of the fact that the preliminary injunction secured protection to the complaining party against any direct interference, the court very properly continued the proceeding until final completion of defendant's line, when it could be certainly ascertained what, if any, injury would result. Upon final hearing the findings and conclusions of the court were adverse to the plaintiff's contention, and the bill was accordingly dismissed. We are here asked to reverse these findings on the ground that they rested on a misapprehension of the evidence, or were regardless of it, and in the latter case arbitrary. The interference complained of is twofold : first, introducing elements

of danger which increase the hazard to life and property; and, second, such appropriation of plaintiff's right of way as will prevent an enlargement of plaintiff's line to accommodate a possible or probable increase of business. Under the first, these are specifically complained of: (1) stringing the wires of defendant company above those of the plaintiff without sufficient elevation; (2) conducting the wires of the plaintiff through split insulators, and (3) placing defendant's feed wires and brackets so close to the wires of the plaintiff as to make them a source of danger. Each of these alleged interferences was specifically passed on by the court, and the findings with respect to them are clear and explicit. In the construction of defendant's line, the general scheme contemplated the stringing of the wires some four or five feet above those of the plaintiff; and this distance has been fairly well observed, except in several places where the distance that separates them is something less than two feet. It requires no expert testimony to persuade anyone that the danger of contact between wires is lessened as the elevation of one above the other is increased. It is quite as evident that no particular elevation of one wire over another will secure against possible contact. The elements will disport with wires just as they do with things even more securely and permanently established. The question here for the court to determine was, whether the defendant's line at its lowest elevation, or where the lines were in closest proximity, endangered the plaintiff's property and the safety of its employees and the public. The witness whose testimony is specially relied upon to establish the plaintiff's proposition, was Irvin R. Prentiss, an expert. He testified that in two places the defendant's line was a continuing menace, inasmuch as in these places the wires were brought within two feet of each other. He was asked: "What effect would the wires of the new company have upon the wires of the old company at that distance?" To this he replied: "None at all if they would stay there." Upon cross-examination this was repeated. He was asked, "If the wires stay where they are, it would not effect the system?" His answer was: "Not if they are kept clear, no sir." Except for the liability of the upper wire to sag from storm or sleet, this witness saw no danger in the proximity of the wires. That

no uniform standard of distance is observed with respect to the placing of wires, also clearly appears in the testimony of this witness. He was asked: "Have you seen that kind of construction in different towns where the wires are much closer than this if vertical? A. Yes, sir, I presume I have. Q. How close have you seen them together vertical? A. I have seen them right close together. Q. How close? A. Six or seven inches. Q. Wires of different companies? A. Yes, sir." The only danger this witness saw was in increased liability to contact of wires through storm and sleet. May this increase of risk be more than counterbalanced by greater precaution in the construction and support at the point where the lesser distance separates? That it could, was unquestionably the view of this expert, and all the other witnesses in the case; and it stands to reason that it is so. It became then a question of adequate construction and support. Acting upon the criticism of this expert witness for the plaintiff, the defendant company at once set about a correction of their line in the respect indicated, not by increasing the distance between the wires, but by securing, insulating and bracketing the wires. Whether this was accomplished became the only question. If the wires of defendant company, where they were but two feet from the wires of the plaintiff, were so braced, insulated and bracketed, as to be no more liable to be brought in contact with the latter by sagging, than the wires which were separated by the greater distance, and admitted of safe access to plaintiff's wires, the plaintiff's complaint was without basis. On this question the evidence of defendant's witnesses was explicit and direct. However it may have conflicted with the testimony offered by plaintiff, it was convincing to the mind of the learned judge who heard the case. It was for him, not for us, to decide where the preponderance was. In refusing to find as requested by plaintiff, that defendant's line was an interference with plaintiff's because of the close proximity, he was amply sustained by the evidence. With respect to the interference complained of in conducting the plaintiff's wires, where attached to the poles of defendant through split insulators, it is enough to say that this method was approved by Mr. Prentiss, the expert witness called by plaintiff, and it was because of his approval that it

was substituted for the method originally adopted. As to the way in which the feed wires and brackets of defendant's street lamps were put up, while plaintiff's witnesses testified that they were too close to plaintiff's wires for safety, the testimony on the other side was that if increased danger had resulted therefrom, it had been avoided by additional supports, such as cross-arms, and increased insulation since provided. It was a clear difference of opinion as to results. A finding either way with respect to it would have found support in the evidence. The conclusion reached by the learned judge from a consideration of all the evidence was, that defendant's line as they had constructed it, in no way interfered with the plaintiff; that with the exercise of that care and diligence which should always be observed where wires of different systems are liable to be brought in contact, the two lines may be operated with no more danger than if a uniform distance of four or five feet from each other had been observed. It is enough to know that this conclusion rests upon adequate evidence. Quite as much may be said with respect to the court's refusal to find that defendant's appropriation does not leave sufficient room for enlargement of plaintiff's facilities. The learned judge had the whole situation before him. The question here presented was one that could only be determined by careful consideration of every feature of the case. The finding does not accord with the testimony of the only witness called by the plaintiff on this branch of the case, and it may be that he is not specially contradicted by any other; but we cannot say that the finding is not justified by the general evidence as to the construction of the defendant's system in its relation to the plaintiff's poles and wires. Nothing short of clear error would call for our interference with the finding, and this does not appear.

The decree of the court below is affirmed, and the appeal is dismissed at the costs of appellants.